# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PATRICIA RENEE PINA,**                    Chapter 7
    Debtor                              Case No. 06-12205-JNF

~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Motion of KAC Associates, LLC and Brian Conefrey to Compel Compliance with State Court Order or, in the Alternative, to Dismiss the Case or Grant Relief from Stay" (the "Motion to Compel"). Pursuant to the Motion to Compel, KAC Associates, LLC ("KAC") and Brain Conefrey ("Conefrey")(collectively, "KAC") primarily seek an order compelling this Court to give effect to a final, non-appealable judgment of the Massachusetts Superior Court, Department of the Trial Court, dated October 11, 2005. That order required the Debtor, Patricia Renee Pina (the "Debtor"), to convey her 51% interest in a 36.51 acre property located at 59 Parsonage Road, Plympton, Massachusetts, known as Aces Wild Farm & Ranch (the "Property"), to KAC under the terms of a Co-Tenancy Agreement. Both the Chapter 7 Trustee of the Debtor's

1

bankruptcy estate, Donald Lassman, Esq., and the Debtor filed Oppositions to KAC's Motion to Compel.

The Court heard the Motion to Compel on December 13, 2006 and directed the parties to file briefs by December 20, 2006. The Debtor did not file a brief in support of her position as it mirrors that of the Trustee. KAC and the Trustee timely filed briefs, as well as supplemental briefs.

The principal issue for determination is whether the Trustee's status as a bona fide purchaser for value under 11 U.S.C. § 544(a)(3) is superior to KAC's rights under the October 11, 2005 judgment. For the reasons set forth below, the Court concludes that the Trustee's statutory status prevails over the pre-petition rights of KAC to enforce its state court judgment.

The facts necessary to decide the issue are not in dispute, although the legal import given to those facts is contentious. Because the material facts are not in dispute, and because neither KAC nor the Trustee requested an evidentiary hearing, the Court shall treat the Motion to Compel and the alternative requests for relief set forth in the motion as a motion for summary judgment. *See* Fed. R. Bankr. P. 7076. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on July 10, 2006. She failed to list three prior bankruptcy cases on her petition, specifically a Chapter 13 case (Case No. 01-17221-CJK), which was filed on September 17, 2001, and two Chapter 12 cases: Case No.

02-11307-CJK, which was filed on February 25, 2002, and Case No.  02-13593-CJK, which was filed on May 12, 2002.  In the Chapter 12 case immediately preceding this Chapter 7 case, Case No. 02-13593-CJK, the Debtor procured financing from KAC and Conefrey, proposed a Chapter 12 Plan through which she paid her unsecured creditors in full, and obtained a discharge on March 15, 2004.

In obtaining confirmation of her Chapter 12 plan, the Debtor disclosed that she was a licensed equine professional and that she purchased the Property in 1998 for the purpose of operating a horse breeding farm for American Quarter Horses.  She stated that it had been her intention to breed, train, and sell Quarter Horses for profit, but that her business plans went awry because of "dropped foal syndrome," the result of the ingestion by mares of debris and pests associated with wild cherry trees.

The Debtor's Chapter 12 Plan required a loan from investors which was contingent upon a sale of 49% of her interest in the Property to Conefrey for $140,000.00, subject to all preexisting liens and encumbrances, as well as  Conefrey's agreement, as joint owner, to co-sign a loan from, and first mortgage to, the investors.  The Debtor further disclosed her intention to execute the Co-Tenancy Agreement within thirty days of confirmation.

Judge Kenner confirmed the Debtor's Chapter 12 Plan on September 17, 2002.  In accordance with the representations in her Chapter 12 Plan, the Debtor and KAC executed a Co-Tenancy Agreement on October 17, 2002.  Its purpose was

> to establish the rights of each Co-Tenant as they relate to the Property and to establish a framework in which the Co-Tenants will (a) own, operate, maintain, develop in any way deal with the Property and (a) [sic] own,

operate, maintain, develop a horse farm business that will include, but not
be limited to breeding, boarding and lessons.

The Agreement provided that "the Property shall be real property for all purposes" and

that "for income tax purposes only the Co-Tenancy shall be treated as a partnership."

Additionally, the Co-Tenancy Agreement contained provisions relating to a "deadlock"

between the Debtor and KAC, which would be "deemed to exist whenever the Co-Tenants

cannot unanimously agree on any of the decisions requiring their unanimous approval in

accordance with the terms of this Agreement, within fifteen (15) business days after a Co-

Tenant requests the consent or approval of the other Co-Tenants to any such decision."

On April 19, 2004, approximately a year and a half after the Debtor and KAC

executed the Co-Tenancy Agreement and approximately one month after the Debtor's

Chapter 12 bankruptcy case was closed, KAC offered to purchase the Debtor's 51% interest

in the Property for $75,000.00, or, in the alternative, for the Debtor to purchase KAC's

interest in the Property for $75,000.00. Because the Debtor failed to respond to its offer, on

June 24, 2004, KAC filed a Complaint in the Superior Court seeking an order requiring the

Debtor to convey her interest in the Property to it for a purchase price of $75,000.00.

On November 3, 2004, while the Superior Court action was pending, the

Massachusetts Society for the Prevention of Cruelty to Animals (the "MSPCA") seized 28

horses and 33 sheep located on the Property.  Although the Debtor listed a claim against

the MSPCA  as an asset on Schedule B-Personal Property, the MSPCA, in its proof of claim

and other pleadings filed with this Court, has alleged that the animals on the Property in

4

Plympton were in "inexcusably poor condition from prolonged mistreatment and neglect."

KAC filed a motion for summary judgment in the Superior Court action, but the court denied it, finding that under the "deadlock" provisions of the Co-Tenancy Agreement KAC's offer to purchase the Property lacked specificity with respect to the parties' future liability for the mortgages encumbering the Property. *See* KAC Assocs., LLC v. Pina, No. 2004-799, Slip Op. at 1 n. 1 (October 11, 2005).  After KAC's first motion for summary judgment was denied, it sent another letter to the Debtor dated February 17, 2005 containing a new proposal which gave the Debtor "the option to either sell her interest in the Property to KAC for $75,000.00 minus costs associated with interest on the loans and taxes on the Property, or to buy KAC's interest in the Property for the same purchase price." Id. at 3-4.  KAC also proposed to pay off six outstanding mortgages on the Property which as of February 25, 2005 had a collective balance exceeding $500,000.00. Id. at 4.  The Debtor refused KAC's offer and, on April 29, 2005, KAC renewed its motion for summary judgment on its claim for specific performance.  Id. at 4-5.

On October 11, 2005, the Superior Court granted that KAC's second motion for summary judgment, finding that the Debtor had failed to make mortgage payments in April, May and June of 2004 and that KAC, prior to sending the April 19, 2004 offer, had proposed subdividing up to one-half of the Property into building lots to generate capital for the horse farm business, to reduce debt, and to build an indoor riding arena.  According to the Superior Court, the Debtor, whose consent was required under the Agreement, failed to respond to KAC's proposal, thereby creating a deadlock under the Agreement.  The

5

Superior Court determined that under section 10.9(a)(iv)(B)(1) of the Agreement, KAC, as the "Proposing Party," had the option to designate a purchase price for the Property by giving notice of the purchase price to the "Refusing Party." Id. at 3.

After a thorough examination of the deadlock provisions, the Superior Court determined that

> [w]hen Pina rejected KAC's proposal on March 16, 2005, she became obligated to sell her interest in the Property to KAC under the terms contained in the February 17, 2005 proposal. Accordingly, there is no genuine issue of material fact with respect to the enforceability of the deadlock provision of the Agreement; therefore, KAC is entitled to summary judgment as a matter of law.

Id. at 6-7. The Superior Court entered an order directing the Debtor to convey her interest in the Property to KAC under the terms and provisions of the February 17, 2005 proposal in accordance with Article 10.9 of the Agreement. Id. at 7.

The Debtor failed to comply with the Superior Court's October 11, 2005 order. She filed a Notice of Appeal, as well as an Emergency Ex Parte Motion for Stay or Injunction Pending Appeal on December 7, 2005, but the Superior Court denied her Ex-Parte Motion. The Appeals Court eventually dismissed her appeal for lack of prosecution.

Because the Debtor refused to cooperate with KAC in scheduling a closing, KAC, on January 25, 2006, filed a Complaint for Contempt in which it sought to enforce the Superior Court's order. Immediately preceding the trial, which was scheduled for June 19, 2006, KAC and the Debtor reached a settlement agreement. Pursuant to the agreement, which was reported to the Superior Court, the Debtor agreed to convey her 51% interest

6

in the Property on July 11, 2006. The Superior Court's order, which incorporated the terms

of the settlement agreement, provided:

> The closing shall occur on July 11, 2006 at 10 am at the Plymouth County
> Registry of Deeds. The settlement sheet shall be delivered to the defendant
> Patricia Pina by Friday, July 7, 2006. The plaintiff, KAC Associates shall pay
> off the principal and interest on all mortgages and taxes existing at the
> closing date. At the closing the plaintiff will deliver to the defendant a check
> in the sum of $23,031.00, said figure taken from the December Spread Sheet
> (Exhibit H). The defendant Pina shall deliver the deed and execute all
> documents required at the closing. Attorney Kimmell shall send a copy of
> the proposed deed to defendant Pina by June 23, 2006. KAC shall execute a
> letter allowing the defendant Pina to remain on the property until August 31,
> 2006. Attorneys' fees are waived if the defendant Pina complies with this
> Order.

As noted above, the Debtor filed a voluntary Chapter 7 petition on July 10, 2006.

Neither KAC nor Conefrey sought, obtained, or recorded an attachment or Notice of Lis

Pendens with respect to the Property before July 10, 2005. Similarly, neither KAC nor

Conefrey recorded the October 11, 2005 judgment for specific performance.

On her Schedules of Assets and Liabilities, the Debtor listed the Property with a

value of $2.5 million, as well as various creditors holding secured claims against the

Property, including Conefrey with a junior mortgage in the sum of $10,000.00; Henry and

Larry Lewandowski and Morris Wollinan, the investors from whom she obtained financing

in her Chapter 12 case, with a mortgage in the sum of $90,833.00; and the United States

Department of Agriculture, Farm Service Agency, with four mortgages totaling

$491,813.00. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor

listed 21 creditors holding claims in excess of $148,660.00.[1]  On Schedule H-Codebtors, the

Debtor listed Conefrey as a co-debtor with respect to the investors' loan and the Farm

Service Agency loans.  The Debtor subsequently amended Schedule A to reduce the value

ascribed to the Property.  The Trustee and KAC agree that the most recent and thus most

reliable evidence of the Property's value is an appraisal prepared in November of 2005 by

Sullivan Appraisal Services showing a market value of $900,000.00, subject to liens and

priority claims totaling $615,565.00, according to KAC's Settlement Statement prepared in

anticipation of the July 11, 2006 closing.

## III. POSITIONS OF THE PARTIES

### A. KAC Associates, LLC and Brian Conefrey

KAC argues that it held "equitable title to all of the Property from at least March 16,

2005, the date Pina rejected its buyout proposal, thereby making it "'irrevocably obligated'

to purchase Pina's co-tenancy interest" and triggering a fixed and mandatory closing date

180 days after the February 17, 2005 proposal.  Relying upon Mass. Gen. Laws ch. 183, § 43,

it also asserts that it holds legal title.[2]  Specifically, KAC argues that the Superior Court

---

[1] The Debtor listed a number of creditors holding unliquidated claims.
Accordingly, she was unable to list the exact amount of the unsecured claims.

[2] Section 43 provides the following:

Whenever a final decree in equity shall be made by the supreme judicial,
superior, probate or land court directing that a deed, conveyance or
release of any real estate or interest therein shall be made, and the party
directed to make such deed, conveyance or release does not duly execute
it *within the time specified in the decree*, the decree itself shall operate to vest
title to the real estate or interest in the party entitled thereto by the decree

8

"necessarily embraced" the timing provisions set forth in the Co-Tenancy Agreement so that the closing was to occur on or about August 17, 2005 - - 180 days after the date of the February 17, 2005 proposal.

KAC suggests that the Debtor's bankruptcy estate is comprised of the Debtor's right to receive performance of its obligations under the court ordered transaction, namely the discharge of all mortgages on the Property, the discharge of all tax liens, and the payment of cash to the estate.  Citing 11 U.S.C. § 541(d), as well as NTA, LLC v. Concourse Holding Co. (In re NTA, LLC), 380 F.3d 523 (1st Cir. 2004), and Poss v. Morris (In re Morris), 260 F.3d 654 (6th Cir. 2001), KAC argues that this Court must look to Massachusetts law to determine the respective rights of the parties.  Relying upon Mass. Gen. Laws ch. 183, § 43 and common law as set forth in Allen v. Rakes, 359 Mass. 1 (1971), and Dooley v. Merrill, 216 Mass. 500 (1914),[3] it maintains that this Court must presume that monetary damages

_____

> as fully and completely as if such deed, conveyance or release had duly been executed by the party directed to make it.

Mass. Gen. Laws ch. 183, § 43 (emphasis supplied).


[3] In Dooley, the Supreme Judicial Court stated:

> It is well settled that when by the terms of a binding contract a conveyance of land ought to be made, equity will regard that done which ought to be done, and, if the holder of the legal title refuses to make conveyance, will treat him as trustee for the purchaser ready and able to perform his part of the contract. *This equitable obligation will be enforced not only against the holder of the legal title, but against others taking an interest in the legal title with notice*, and adequate remedy will be afforded to carry out this principle.

are an inadequate remedy and order specific performance.

Alternatively, KAC urges the Court to exercise its equitable powers under 11 U.S.C. § 105(a) to order the Trustee to comply with the order of the Superior Court. Citing, *inter alia,* In re Shar, 253 B.R. 621, 632 (Bankr. D.N.J. 1999), it argues that a federal court must give the state court judgment preclusive effect. It further asserts that the court-ordered transaction is fundamentally in the interest of the estate and creditors because it would result in the satisfaction of all secured and unsecured priority claims and generate cash for a dividend to unsecured creditors.

In its Supplemental Brief, KAC addresses the Trustee's status and powers under 11 U.S.C. § 544(a). Citing Haber Oil Co., Inc. v. Swinehart (Matter of Haber Oil Co. Inc.), 12 F.3d 426, 436 (5th Cir. 1994), Universal Bonding Ins. Co. v. Gittens and Sprinkle Enters., Inc., 960 F.2d 366, 372 (3d Cir. 1992), and Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93-95 (2d Cir. 1989), it argues that "[t]hree circuit courts have squarely held that when a constructive trust is placed on property prior to the filing of the bankruptcy petition, the trustee has no equitable interest in the property, despite section 544." It urges this Court to apply these precedents to this case, as well as Judge Queenan's decision in In re Mill Concepts Corp., 123 B.R. 938 (Bankr. D. Mass. 1991). In summary, KAC maintains that it had equitable title in the Property because of the two pre-petition orders requiring the Debtor to convey the Property to it. It adds that because the provisions of 11 U.S.C. § 541(d) cannot be negated by those of 11 U.S.C. § 544(a)(3), the

_____

216 Mass. at 500 (citations omitted, emphasis supplied).

10

Trustee has the same obligation as the Debtor to convey the Property to it.

B. The Trustee

The Trustee's argument is predicated upon the observation that the state court orders were directed to the Debtor, not to him, and that he has no obligation under state or federal law to perform under the orders. Moreover, he observes that enforcement of the state court orders would arbitrarily and unfairly penalize the creditors of the Debtor's bankruptcy estate because an arms length sale would generate more money for the estate. He adds that "[s]ection 10.9 of the Co-Tenancy Agreement effectively penalizes the Debtor's estate for her inability to raise sufficient funds to buy out KAC's interest where KAC as the Proposing Party offered to sell its interest to the Debtor." He asserts that the value of the Debtor's interest calculated under the Co-Tenancy Agreement does not correspond to the actual fair market value of the Property.

Although recognizing that the state court orders are entitled to deference under the Rooker-Feldman doctrine, *see* Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923),[4] the Trustee maintains that the rights of the Debtor's creditors were not considered by the state court

---

[4] *See also* D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court held that the Rooker-Feldman doctrine should be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" and that it "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id. at 284.

and that, upon the filing of the bankruptcy petition, his rights as trustee under the

Bankruptcy Code, particularly his status as a bona fide purchaser of real estate without

notice under 11 U.S.C. § 544(a)(3), warrant a determination that the Superior Court orders

are unenforceable in this case.  Specifically, the Trustee maintains that Mass. Gen. Laws ch.

183, § 44 requires recordation of state court decrees for them to be effective against an

attaching creditor or bona fide purchaser,[5] a status he holds as trustee in bankruptcy.

In his Supplemental Memorandum the Trustee asserts that the Co-Tenancy

Agreement is an executory contract which may be rejected.  Moreover, he reiterates his

contention that KAC cannot rely upon Mass. Gen. Laws ch. 183 § 43 because the statute

does not apply by its terms to either order and because neither order was recorded with

the applicable registry of deeds.

## IV. DISCUSSION

A. <u>Summary Judgment Standard</u>

The standard for allowance of summary judgment is well known and needs little

---

[5] Section 44 provides:

The recording or registration of a duly certified copy of such decree,
attested by the clerk, assistant clerk, register or assistant register, recorder
or deputy recorder, as the case may be, of the court where made, in the
registry of deeds of the district where said real estate is situated, shall
have the same force and effect as if a duly executed deed, conveyance or
release had so been recorded or registered.

Mass. Gen. Laws ch. 183, § 44.

explanation.  This Court may enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056(c). In considering a motion for summary judgment, this Court must draw all reasonable inferences from the facts in the manner most favorable to the nonmovant. *See* <u>Beatrice v. Braunstein (In re Beatrice)</u>, 296 B.R. 576, 579 (B.A.P. 1st Cir. 2003)(citing <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 763 (1st Cir. 1994), and <u>Piccicuto v. Dwyer</u>, 39 F.3d 37, 40 (1st Cir. 1994)).

Both parties submitted exhibits.  In particular, KAC attached 16 exhibits to its pleadings; the Trustee submitted two exhibits and extensively relied upon those submitted by KAC.  Neither party challenged the factual contentions of the other.  As noted at the outset, the Motion to Compel requires resolution of complex legal questions, not factual ones.

B. <u>Analysis</u>

1. The Motion to Compel Compliance with State Court Order

The issues presented by KAC's Motion to Compel are numerous and difficult.  They include: 1) Whether the Superior Court orders dated October 11, 2005 and June 19, 2006 directing specific performance under the Co-Tenancy Agreement resulted in a constructive trust, whereby the Debtor holds her equitable interest in the Property in trust for KAC; 2) Whether the Trustee's powers under 11 U.S.C. § 544(a) have priority over any rights KAC

13

may have obtained as a result of the Superior Court orders; 3) Whether the Co-Tenancy

Agreement is an executory contract; and 4) Whether KAC has  a claim in the Debtor's

bankruptcy case.  Although resolution of the issues requires consideration of several areas

of the law which are unsettled, what is clear is that their resolution will affect the size of

the Debtor's bankruptcy estate and the amount of distributions to creditors.  If the Court

were to grant KAC's Motion to Compel, the estate would receive approximately $23,000.00,

in cash, plus satisfaction of liens  encumbering the Property.  If the Court were to deny the

Motion and if the Trustee were to successfully obtain a judgment authorizing the sale of

the Property for its approximate fair market value of $900,000.00, *see* 11 U.S.C. § 363(h), the

estate would be entitled to 51% of the equity remaining after satisfaction of the liens in the

approximate sum of $615,000.00 and costs of sale, a sum significantly greater than

$23,000.00.

The first issue for the Court's determination is whether the Debtor held the equitable

interest in the Property in a constructive trust for KAC at the commencement of the case.

In other words, at the time the Debtor filed her bankruptcy petition, had the Property been

impressed with a constructive trust in favor of KAC?

The issue arises in the context of 11 U.S.C. § 541(a) and (d) of the Bankruptcy Code.

Section 541(a) defines property of the estate, with certain exceptions, as "all legal or

equitable interests of the debtor in property as of the commencement of the case."  11

U.S.C. § 541(a).  "The statutory language evinces congressional intent to include a broad

range of property."  <u>City of Springfield v. Ostrander (In re Lan Tamers, Inc.)</u>, 329 F.3d 204,

14

209 (1st Cir. 2003),*cert. denied,* 540 U.S. 1047 (2002)(citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204-05 (1983)).  Section 541(d), in contrast, excludes property in which "the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest."   11 U.S.C. § 541(d).   That section "excludes property from the estate where the bankruptcy entity is only a delivery vehicle and lacks any equitable interest in the property it delivers." <u>Lan Tamers, Inc.</u>, 329 F.3d at 210.

Property and interests in property are determined with reference to state law, in the absence of any controlling federal law.  *See* <u>Barnhill v. Johnson</u>, 503 U.S. 393, 398 (1992); <u>Butner v. United States</u>, 440 U.S. 48, 54-55 (1979).  Section 541(d) "does not authorize bankruptcy courts to recognize a constructive trust based on a creditor's claim of entitlement to one; rather, section 541(d) only operates to the extent that state law has impressed property with a constructive trust prior to its entry into bankruptcy." <u>Poss v. Morris (In re Morris)</u>, 260 F.3d 654, (6th Cir. 2001) (citing <u>XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)</u>, 16 F.3d 1443, 1451 (6th Cir. 1994)). In <u>Davis v. Cox</u>, 356 F.3d 76, 84 (1st Cir. 2004), the United States Court of Appeals for the First Circuit, proceeding narrowly on the remedial theory of constructive trust, recognized the effect of a pre-petition constructive trust under § 541(d).  It ruled that under Maine law,  a Chapter 13 debtor, Cox, held an exempt IRA account in a constructive trust in favor of his ex-spouse, Davis, by virtue of his misconduct in violating a divorce court's injunction entered prior to

15

bankruptcy, such that Davis's interest trumped the debtor's interest under § 541(d).[6]

_____

[6] The First Circuit emphasized the special equities favoring Davis and "Cox's contemptuous misuse of marital assets prior to bankruptcy . . . in defiance of the [state] court's injunction," 356 F.3d at 90. It also highlighted that "inclusion of the Advest IRA in the bankruptcy estate would not mean the IRA will go to Cox's creditors . . . [because] . . . the Advest IRA is exempt from Cox's creditors, being needed for his support and that of his dependents." Id. at 83 n.5. Finally, it added:

> we need not worry about whether the trustee's strong arm powers under 11 U.S.C. § 544 cut off Davis's beneficial interest in the Advest IRA. In this case, the trustee did not attempt to avoid Davis's interest in the Advest IRA and, in fact, wholly supported the award. Thus, this case can be distinguished from those cases in which the courts have concluded that the filing of a bankruptcy petition cut off the unrecorded equitable rights of a non-debtor spouse.

Id. at 92 (footnotes omitted). The First Circuit cited the following cases in which courts determined that the filing of the bankruptcy petition cut off unrecorded equitable rights:

> Perlow v. Perlow, 128 B.R. 412, 415 (E.D.N.C.1991) (finding § 544 cut-off spouse's right because under North Carolina law a judgment creditor's rights are superior to a spouses because the filing of divorce does not create a lien on specific marital property in favor of the spouse); Lawrence v. Lawrence, 237 B.R. 61, 78-79 (Bankr.D.N.J.1999) (finding § 544 cut-off spouse's right because under New Jersey law a judgment creditor's rights are superior to a spouse's if the lien was obtained prior to divorce judgment); Anderson v. Briglevich ( In re Briglevich ), 147 B.R. 1015, 1022 (Bankr. N.D.Ga. 1992) (concluding that non-debtor's unrecorded equitable interest in marital property cut-off by trustee's strong arm powers); In re Vann, 113 B.R. 704, 706 (Bankr. D.Colo. 1990) (stating that until a spouse takes affirmative action to perfect her interest in marital property the trustee's rights are superior under § 544).

Id. at n.13.

If this Court were to find that the Superior Court orders impressed a constructive trust on the Property, the Debtor's bankruptcy estate would be comprised of only the Debtor's legal interest in the Property pursuant to 11 U.S.C. § 541(d).  "Under bankruptcy law, this results in the beneficiary of the constructive trust being able to collect on its debt ahead of the other unsecured creditors who must participate in the pro rata distribution scheme set up by the Bankruptcy Code."  In re Indian River Estates, Inc., 293 B.R. 429, 435 (Bankr. N.D. Ohio 2003).[7]

The Supreme Judicial Court has ruled that "[u]nder Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or other circumstances indicating that he would be unjustly enriched." Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994), cert. denied, 511 U.S. 1142 (1994)(citing Nessralla v. Peck, 403 Mass. 757, 762-63 (1989)). See also  Lassman v. McQuillan (In re Charles River Press Lithography, Inc.), 338 B.R. 148, 161 (Bankr. D. Mass. 2006); In re Lan Tamers, Inc., 281 B.R. at 793 (Bankr. D. Mass. 2002), aff'd, 329 F.3d 204 (1st Cir. 2002), cert. denied, 540 U.S. 1047 (2003).  A constructive trust "'is imposed not because of the legally inferred intention of the parties but because the court concludes that the person holding the title to the property, if permitted to keep it, would profit by a wrong . . . .'"Charles River Press Lithography, 338 B.R. at 160-61 (citing

---

[7] As noted, a constructive trust is not a true trust but an equitable remedy.  In In re NTA LLC, 380 F.3d at 530, the First Circuit determined that a Standstill and Escrow Agreement between the litigants was in the nature of a true trust under Illinois law, thereby depriving the Debtor's Chapter 11 estate of an interest in the "Membership Interests" held in escrow at the commencement of the case.

Restatement (Third) of Trusts, § 7 cmt. d). *See also* <u>Conn. Gen. Life Ins. Co. v. Univ. Ins. Co.</u>, 838 F.2d 612, 618 (1st Cir. 1988).

The imposition of constructive trusts in bankruptcy cases has not produced uniform results and the law remains unsettled. *See* <u>Carlson Orchards, Inc. v. Linsey (In re Linsey)</u>, 296 B.R. 582, 585-86 (Bankr. D. Mass. 2003)(citing Robert J. Keach, The Continued Unsettled State of Constructive Trusts in Bankruptcy, 103 Com. L.J. 411 (1988)).   It generally is a case-specific inquiry, driven by the desire of courts to avoid injustice. *See* <u>Davis v. Cox</u>, 356 F.3d at 90.   Courts' acceptance of the construct frequently occurs at the intersection of bankruptcy and divorce law. <u>Id.</u> at 84.   *See also* <u>In re Perry</u>, 131 B.R. 763 (Bankr. D. Mass. 1991).

In <u>CRS Steam, Inc. v. Eng'g Resources, Inc. (In re CRS Steam, Inc.)</u>, 225 B.R. 833 (Bankr. D. Mass. 1998), a decision involving two Chapter 11 cases in which CRS Steam, Inc and its principal, Thomas F. LeBlanc, sought to set aside as a preferential transfer a court-ordered assignment of patents to Engineering Resources, Inc., Judge Queenan thoroughly examined the nature of the remedial device of the constructive trust under state law with particular reference to principles set forth in the Restatement of Restitution and numerous scholarly articles.   He observed that courts occasionally employ constructive trusts to remedy a breach of contract "when the benefit derived by the party in default exceeds the other's loss."   225 B.R. at 836 (citation omitted).   Judge Queenan further observed the following:

Because a constructive trust is imposed as a remedy to prevent unjust

18

enrichment, the trust terminology is a "fiction of equity." "The court must give expression to the idea that the defendant has been under a duty to give the complainant the benefit of the property ever since the defendant began to hold unjustly, by holding that the defendant has since the inception been in the same position as if he had been an express trustee of the property." This facilitates giving the complainant priority over creditors of the defendant who acquire judicial liens prior to issuance of the court decree declaring a constructive trust. But there is really no "trust" at all, in the proper sense of the term. Rather than seeking to establish an equitable interest, the party requesting ownership of the property wants to enforce an equitable right to a legal interest. He may elect between obtaining the property itself or a money judgment for its value.

There is disagreement on the nature of the claimant's rights in the property prior to its transfer to him. Although conceding that a constructive trust is merely a remedy and thus quite different from a true trust, the Restatement nevertheless observes that the constructive trust claimant has "some kind of an equitable interest in the property." Scott agrees. He believes the trust exists from the time the "trustee" acquires the property. *He likens the equitable property rights of the claimant to those of a purchaser under a contract which is specifically enforceable. Recognizing that the question is "difficult," Scott believes the existence of such an interest is supported by the priority which the beneficiary enjoys over intervening judicial creditors and transferees who are not bona fide purchasers for value.* Bogert has a different view as to when the trust arises. Stressing the fictional nature of the trust and the beneficiary's right to elect to receive either the property or its value, he thinks no trust arises until entry of a decree ordering the transfer. He expresses no opinion on whether the beneficiary has a property interest thereafter. . . . Many other courts apply the fiction to its full extent and rule that the trust exists from the time of the property's acquisition by the "trustee."

225 B.R. at 837-38 (emphasis added, footnotes omitted)(citing, *inter alia*, Restatement of Restitution § 160 cmt. a (1937); 5 Austin Wakemen Scott & William Franklin Fratcher, The Law of Trusts and Trustees § 462 (4th ed. 1989); and George Glenn Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 472 (Rev. 2d ed. 1978)).

Turning to the treatment of constructive trusts in bankruptcy cases, Judge Queenan

noted the following:

> Under general state law, the beneficiary of a constructive trust has priority over creditors of the constructive trustee holding judicial liens. If the estate representative asserts only judicial lien rights, as he must under section 544(a) if personal property is involved, the estate fares no better than do judicial lien creditors outside of bankruptcy. But state law is kinder to a bona fide purchaser for value. That party enjoys priority over the beneficiary of a constructive trust. Unlike a judicial lien creditor, who extends unsecured credit prior to obtaining his lien, a bona fide purchaser relies upon the constructive trustee's ownership in parting with his money. If the property is real property, the estate representative usually wins because he can assert the rights of a bona fide purchaser pursuant to section 544(a)(3).

Id. at 838 (citations omitted).

With respect to the facts of this case, the Court finds that KAC has failed to establish that it obtained a constructive trust under Massachusetts law that arose before the commencement of the Debtor's case, and, even if it did, under Mass. Gen. Laws ch. 183, § 43, its rights must yield to those of the Trustee who has asserted his status as a bona fide purchaser of real property, "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a)(3).

The Superior Court orders compelled the Debtor to convey the Property to KAC as a result of her refusal to honor the provisions of the Co-Tenancy Agreement in the event of a deadlock. The Superior Court, in its October 11, 2005 order, did not mention fraud, mistake, breach of duty or unjust enrichment on the part of the Debtor. Similarly, the Superior Court, in its June 19, 2006 order in KAC's contempt action, did not find the Debtor in contempt, incorporating, instead, the agreement of the parties to conduct a closing on July 11, 2006. This Court finds that the orders of specific performance, in and of

20

themselves, did not create a constructive trust which would divest the Debtor's bankruptcy estate of her equitable interest in the Property; at most they gave KAC the status of a holder of an unrecorded deed.   Nevertheless, case law exists which lends support to KAC's position. *See* Poss v. Morris (In re Morris), 260 F.3d 654 (6th Cir. 2001); In re Indian River Estates, Inc., 293 B.R. 429 (Bankr. N. D. Ohio 2003); Rusiski v. Pribonic (In re Pribonic), 70 B.R. 596 (Bankr. W.D. Pa. 1987); and Blodgett v. Green Lantern, Inc. (In re Green Lantern, Inc.), 64 B.R. 356 (Bankr. W.D. Pa. 1986). The Court shall discuss each of these decisions because they seemingly support KAC's entitlement to a constructive trust, as well as, in certain instances, an order granting it relief from the automatic stay imposed by 11 U.S.C. § 362(a).  As will be demonstrated, however, each of the cases is distinguishable from the facts of the instant case.  Moreover, none are binding precedent.

In In re Morris, a 2001 case with "a tangled history of multiple, concurrent legal proceedings arising from two transactions over fifteen year ago," 260 F.3d at 657, the Sixth Circuit determined that a pre-petition settlement agreement, which was adopted and incorporated by reference in the judgment of the state court, required the debtor to convey property, and was addressed in a subsequent order of the state court authorizing the aggrieved party to undertake any remedy available at law or in equity, resulted in a constructive trust by operation of Ohio law.  The Sixth Circuit specifically noted, however, that "a constructive trust in this case would not interfere with the policy of ratable distribution."  260 F.3d at 667.  Moreover, the Chapter 13 trustee in Morris did not assert

rights under 11 U.S.C. § 544(a)(3).[8]  Nevertheless, the Sixth Circuit's decision in <u>Morris</u>

limited its prior decision in <u>In re Omegas Group, Inc.</u>, 16 F.3d at 1451 ("[b]ecause a

constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff

obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's

property or assets with a constructive trust"), by recognizing that no prior judicial

determination is required when state law recognizes, as a matter of law, the existence of

a pre-petition constructive trust.

In <u>In re Indian River Estates, Inc.</u>, the court considered a motion similar to the one

filed by KAC, captioned, Motion for an Order Requiring the Debtor-in-Possession to

Execute Sales Contract for Real Property held in Constructive Trust.  Prior to the filing of

its Chapter 11 bankruptcy case, the federal district court had issued an order requiring the

debtor to execute a purchase agreement and convey property to the movant.  The movant

sought a finding that the federal district court's final order requiring specific performance

created in its favor a constructive trust, as well as relief from stay to allow it to continue to

enforce the order of specific performance.  293 B.R. at 432.  Following the decision in

<u>Morris</u>, the court in <u>Indian River Estates</u> summarized its holding as follows:

> First, under the Bankruptcy Code, the specific performance order issued by
> Judge Katz is neither a "debt" subject to discharge, nor a "claim" capable of
> being included in a plan of reorganization. Second, at the time Judge Katz

---

[8] Similarly, in <u>Davis v. Cox</u>, the property subject to the constructive trust in favor
of the debtor's former spouse was exempt property not subject to distribution.  356 F.3d
at 86.  Additionally, the First Circuit stated that it did not need to "worry about whether
the trustee's strong arm powers under 11 U.S.C. § 544 cut off Davis's beneficial interest
in the Advest IRA."  <u>Id.</u> at 92.

issued his order for specific performance, a constructive trust was created in favor of Preferred Properties. As a result, the DIP's bankruptcy estate gained no equitable interest in the property under § 541(d). Based therefore upon these findings, it is the conclusion of this Court that relieving the stay of § 362(a) will neither appreciably hamper any proposed plan of reorganization put forth by the DIP, *nor will lifting the stay be detrimental to other creditors* in this case.

293 B.R. at 437 (emphasis supplied).

Notably, in Indian River, the court utilized a "balancing test" with respect to its determination that the movant should be granted relief from the automatic stay to continue enforcement of a prior judgment. Thus, the court weighed the interests of the estate against the hardship incurred by the movant, noting that "if lifting the stay would be unfairly detrimental to a debtor's other creditors, relief will generally not be granted." 293 B.R. at 433 (citations omitted).

The decision in Indian River is distinguishable from the instant case for two reasons. Unlike the situation in Indian River, there will be a substantial detriment to the Debtor's unsecured creditors if the Court were to find that the Property was impressed with a constructive trust. Moreover, the court in Indian River was not presented with, and thus was not required to decide, an opposition to the motion based upon the assertion of the trustee's rights and powers as a bona fide purchaser under 11 U.S.C. § 544(a)(3).

In In re Pribonic, 70 B.R. 596 (Bankr. W.D. Pa. 1987), prospective vendees under a sales agreement moved for relief from the automatic stay. In holding that the vendees were the equitable owners of the real property because of a state court final decree for specific performance, the court granted the vendees' motion, finding that the vendees possessed

23

an equitable interest in the property under the doctrine of equitable conversion, 70 B.R. at

598, and also that the debtor lacked equity in the property because the first and second

mortgages encumbering the property exceeded its fair market value. Id. at 606. The court

determined that "when the parties executed the Sales Agreement, the Rusiskis became

equitable owners of the Property pursuant to the doctrine of equitable conversion."[9] Under

Pennsylvania law, "the relationship between a land contract vendor and vendee is

analogous to that of a mortgagee and mortgagor. Upon execution of the land sale contract,

the doctrine of equitable conversion vests the land contract vendee with equitable title to

the real estate . . . [and the vendor] . . . retains legal title to the real estate as security for

payment of the purchase price." Id. at 602.

The Pribonic decision is not compelling for several reasons. In the first place,

Massachusetts does not recognize the doctrine of equitable conversion. According to the

Massachusetts Supreme Judicial Court,

> Massachusetts does not follow the view recognized in many States that, on
> the execution of a purchase and sale agreement, the purchaser is regarded as
> the equitable owner of real estate, entitled to receive the rents and profits
> from the property. See Laurin v. DeCarolis Constr. Co., 372 Mass. 688,
> 690-691, 363 N.E.2d 675 (1977), and authorities cited; Beal v. Attleboro Sav.
> Bank, 248 Mass. 342, 344, 142 N.E. 789 (1924). In Massachusetts the seller
> continues to hold legal title to the property subject to an equitable obligation
> to convey on payment of the purchase price. See Laurin v. DeCarolis Constr.
> Co., supra at 691, 363 N.E.2d 675; Barrell v. Britton, 244 Mass. 273, 278-279,

---

[9] The court also determined that the Sales Agreement was not an executory
contract for purposes of 11 U.S.C. § 365 and that the vendees did not have a claim under
11 U.S.C. § 101(4), now denominated §101(5), as a result of the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) The Court shall
discuss this case later in this decision.

138 N.E. 579 (1923). Unlike other States, our law provides that, when the parties specify a time for the completion of the sale, the conversion of interest takes place at that specified time-not the date that the parties execute the purchase and sale agreement. <u>Baker v. Commissioner of Corps. & Taxation</u>, 253 Mass. 130, 133-134, 148 N.E. 593 (1925).

<u>Kelly v. Neilson</u>, 433 Mass. 706, 714 n.16 (2001).[10]  In the second place, this Court can infer from the lack of equity in the property, which was the subject of the purchase and sale agreement, that relief from stay would not be prejudicial to the creditors of the debtor's bankruptcy estate.

Finally, the Court finds that the facts in <u>In re Green Lantern, Inc.</u>, 64 B.R. 356 (Bankr. W.D. Pa. 1986), are also distinguishable from the present case.  In that case, a judgment entered against the debtor directing it to transfer personal property in the form of a liquor

---

[10] Judge Queenan observed in <u>CRS Steam, Inc.</u> that

Scott analogizes the constructive trust beneficiary's equitable rights to those of a buyer under a specifically enforceable contract, who is considered an equitable owner pursuant to the doctrine of equitable conversion by contract. That doctrine, however, is a relic of the past whose sun has largely set. It does not prevent the rejection of such a contract from resulting in a claim. The doctrine is an application of the equitable maximum which regards as done that which should be done. The writers are highly critical of the doctrine. One calls it a "grand non sequitur" which disregards the reality that the contract has not been performed. Although the doctrine was in full sway during the nineteenth century, today most courts and legislatures reject it. . . . .

225 B.R. at 843 (footnotes omitted)(citing, *inter alia,*  5 Austin Wakeman Scott & William Franklin Fratcher, the Law of Trusts and Trustees § 462 (4th ed. 1989); 3 James F. Queenan, et. al., Chapter 11 Theory and Practice § 17.33 (1994); Roger A. Cunningham, et. al., The Law of Property § 1.2 (1984)).  In view of the decision in <u>Kelly v. Neilson</u>, the court's earlier decision in <u>Dooley v. Merrill</u>, 216 Mass. 500 (1914), is unpersuasive.

license to the plaintiff.  Although the Chapter 7 trustee raised his status as a bona fide

purchaser of real property, the court , relying upon 11 U.S.C. § 541(d), determined that the

state court had divested the debtor of equitable ownership of the liquor license.  Without

citation to any authority, the court stated: "Even if the Trustee is a hypothetical bona fide

purchaser of the Debtor, all that he has is a legal title which must be transferred according

to the State Court Order.  Id. at 357-58.  Because real property was not involved in the

Green Lantern case, this Court finds that it is distinguishable from the instant case.

KAC relies on the provisions of Mass. Gen. Laws ch. 183 § 43 to support its position.

Its reliance is misplaced.  Although the statute provides that a final decree in equity "shall

operate to vest title to the real estate or interest in the party entitled thereto by the decree

as fully and completely as if such deed . . . had been fully executed," section 43 must be

read in conjunction with Mass. Gen. Laws ch. 183, § 44, which provides, in pertinent part,

that "[t]he recording or registration of a duly certified copy of such decree . . . in the registry

of deeds of the district where said real estate is situated, shall have the same force and

effect as if a duly executed deed . . .  had been so recorded."  Id. (emphasis supplied). The

reference to "such decree," relates to the prior section and requires that the two sections

be construed together.  According to one commentator, "if the prevailing party holds the

judgment or decree and does not record it, he cannot defeat an attachment which was

recorded after the judgment was entered but before the judgment was recorded in the

Registry of Deeds."  Sean M. Dunphy, Probate Titles to Property, 21 Mass. Prac. § 17.1 (2d

ed.)(citing True v. Wisniowski, 13 Mass. App. Ct. 501 (1982)).

Further, Rule 70 of the Massachusetts Rules implements sections 43 and 44.  It

provides the following:

> If a judgment directs a party to execute a conveyance of land or to deliver
> deeds or other documents or to perform any other specific act and the party
> fails to comply within the time specified, the court may direct the act to be
> done at the cost of the disobedient party by some other person appointed by
> the court and the act when so done has the like effect as if done by the party.
> On application of the party entitled to performance, the clerk shall issue a
> writ of attachment against the property of the disobedient party to compel
> obedience to the judgment.  The court may also in proper cases adjudge the
> party in contempt.  If real or personal property is within the Commonwealth,
> the court in lieu of directing a conveyance thereof may enter a judgment
> divesting the title of any party and vesting it in others and such judgment has
> the effect of a conveyance executed in due form of law.

Mass. R. Civ. P. 70.  In summary, the Rule contains five remedies to enforce performance

by a party who has failed to comply with a judgment directing him to perform a specific

act: 1) performance by some other person appointed by the court; 2) attachment of the

property of the disobedient party; 3) contempt; 4) a judgment divesting title to property;

and 5) issuance of a writ of execution.  *See* James W. Smith, Hiller B. Zobel and Charlotte

S. Murphy, Available Remedies, 8A Mass. Prac. Rules Practice § 70.2 (2006 & Supp.).  Prior

the commencement of the Debtor's bankruptcy petition, KAC appears to have elected the

third remedy; but it did not succeed in obtaining an order divesting the Debtor of her title

to the Property, and it did not attach the Property.[11]

─────────────────

[11] Because KAC filed a Complaint for Contempt against the Debtor, the Court can
infer that it was uncertain of its rights under the Superior Court's October 11, 2005
order.  Because the decree itself did not contain a specific time for performance without
reference to the Co-Tenancy Agreement, the Court concludes that KAC did not believe
that the decree operated to divest title to the real estate from the Debtor in the absence
of further relief.  If it did, or if it had recorded the October 11, 2005 order in accordance

The Court concludes that, as between KAC and the Debtor, the decree may have operated to vest title in KAC, but that the Chapter 7 bankruptcy petition interposed another countervailing dynamic in the form of the Trustee's strong arm powers. Based upon the provisions of Mass. Gen. Laws ch. 183, §§ 4, 43, and 44; Mass. Gen. Laws ch. 184, § 17; and Mass. R. Civ. P. 70, as well as KAC's conduct, the Court finds that under Massachusetts law the unrecorded decree cannot bind the Chapter 7 Trustee in his capacity as a bona fide purchaser for value without notice under 11 U.S.C. § 544(a)(3). Although the language of Mass. Gen. Laws ch. 183, § 43 appears plain, it cannot be interpreted and implemented without reference to Mass. Gen. Laws ch. 183, § 44, as well as Mass. Gen. Laws ch. 183, § 4 ("A conveyance of estate in fee simple, fee tail or for life . . . shall not be valid as against any person, except the grantor . . . his heirs and devisees and persons having actual notice of it . . . unless it . . . is recorded in the registry of deeds for the country or district in which the land to which it relates lies."), and Mass. Gen. Laws ch. 184, § 17. That section provides:

> A judgment or decree, at law or in equity, rendered after June eighth, eighteen hundred and ninety-two, affecting the title to real property, shall not have any effect except against the parties thereto, their heirs and devisees and persons having actual notice thereof, unless a certified copy of the record thereof has been recorded in the registry of deeds for the county or district where the land lies, with a memorandum of the town where the land lies and a description thereof sufficiently accurate for identification if the record of the judgment or decree does not give those particulars. If a notice of the pendency of the action has been duly recorded in the registry of deeds, the record of the judgment or decree may be made within sixty days after its rendition, and the entry of an ordinary attachment of real property in the

---

with Mass. Gen. Laws ch. 183 § 44, it may not have found it necessary to file the Complaint for Contempt.

28

registry of deeds shall be considered notice of the pendency of the action.

Mass. Gen. Laws ch. 184, § 17.

In <u>Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.)</u>, 172 B.R. 159 (Bankr. D. Mass. 1994), the court interpreted Mass. Gen. Laws ch. 184, § 17, finding that it was both applicable and dispositive.  The Court stated: "the Trustee holds the assets of the estate *not as the Debtor held them* but with the rights and powers of a hypothetical bona fide purchaser who acquired those assets from the Debtor. Moreover, the Trustee enjoys these rights and powers 'without regard to any knowledge of the trustee or of any creditor.'" <u>Id.</u> at 162. (emphasis supplied). *See also* <u>Tomsic v. Beaulac (In re Beaulac)</u>, 298 B.R. 31, 36 (Bankr. D. Mass. 2003).

In view of the unambiguous provisions of Massachusetts law, the Court finds that, even if the October 11, 2005 or June 19, 2006 orders were effective between KAC and the Debtor, the Trustee's status  as a bona fide purchaser trumps any interest KAC may have acquired.  Had KAC availed itself of the expedient of recording the October 11, 2005 judgment in accordance with Mass. Gen. Laws ch. 183, §§ 4 or 44 or Mass. Gen. Laws ch. 184, § 17, or had it recorded a lis pendens, the Trustee would have had notice and, therefore, would be unable to prevail as a hypothetical bona fide purchaser without notice. Thus, the Court finds that the Trustee's status as a bona fide purchaser gives him the power to avoid KAC's unrecorded equitable interest in the Debtor's property arising out of the orders of the Superior Court.

In <u>Mullins v. Burtch (In re Paul J. Paradise & Assocs., Inc.)</u>, 249 B.R. 360 (D. Del.

29

2000), the district court explored the tension between 11 U.S.C. §§ 541(a) and (d).  It noted

the split of authority on the issue, but adopted the majority view, which holds that

"property not part of the debtor's estate under § 541(d) may still be brought into the estate

under § 544(a)."  <u>Id.</u> at 367 (footnote omitted).  The court reasoned:

> Under current law, § 541(d)'s limitations apply only to property brought into
> the estate under subsection (a)(1) or (2) of that section and, by inference, not
> to subsections (a)(3) or (4). Subsections 541(a)(3) and (a)(4) allow the trustee
> to bring into the bankruptcy estate property that the debtor did not own at
> the commencement of the bankruptcy case but that the trustee may recover
> for the benefit of creditors under various strong arm powers, including §
> 544's strong arm powers. Thus, §§ 541(d) and 544(a) should be construed to
> operate independently of one another. It follows § 541(d) should not be
> construed to limit the Trustee's ability to bring property into the estate
> through the "strong-arm" powers of § 544, and, in particular, through the
> Trustee's rights as a bona fide purchaser of real property.

<u>Id.</u> at 367-68(footnotes omitted).  Although the court in <u>Paradise</u> determined that property

held in a constructive trust is subject to being brought within the estate, it determined that

the Trustee's strong arm powers must be evaluated under appropriate state law.  <u>Id.</u> at 371

(citing <u>Midlantic Nat'l Bank v. Bridge (In re Bridge)</u>, 18 F.3d 195, 200 (3d Cir. 1994)).  *See also*

<u>Mayer v. United States (In re Reasonver)</u>, 236 B.R. 219, 227-28 (Bankr. N.D. Va.

1999)("Congress clearly signaled its intention that the trustee's avoidance powers would

trump claims based solely on the debtors lack of equitable title . . . [and] . . . the trustee

occupies the position of a bona fide purchaser and takes real property free and clear of any

unperfected liens or interests.").

    As noted above, Massachusetts law provides the means by which an order of

specific performance can be perfected against a bona fide purchaser.  Section 17of chapter

184 specifically references equitable decrees, which in the absence of recordation are only

effective between the parties.  In short, the provisions of Massachusetts law evince a clear

legislative intention that recordation is required for a party in the position of KAC to defeat

a bona fide purchasers without notice.  *See also* <u>In re Loewen Group Intern'l, Inc.</u>, 292 B.R.

522, 527 (Bankr. D. Del. 2003)(relying upon a Florida statute comparable to Mass. Gen.

Laws ch. 184, § 17).  Because it is well settled in Massachusetts that "'a deed duly recorded

takes precedence over a prior unrecorded deed,'" *see* <u>Clark v. Kahn (In re Dlott)</u>, 43 B.R.

789, 793 (Bankr. D. Mass. 1983)(quoting <u>General Builders Supply Co. v. Arlington Co-op</u>

<u>Bank</u>, 359 Mass. 691, 696-97 (1971)), the Court finds that KAC's October 11, 2005 judgment

and the June 19, 2006 Superior Court order do not bind the Chapter 7 Trustee.  Even if KAC

had been successful under Mass. R. Civ. P. 70 in having a master appointed by the Superior

Court to execute a deed, absent recordation, such an unrecorded deed would be ineffective

under Massachusetts law to defeat the Chapter 7 Trustee.  Accordingly, KAC is not entitled

to an order requiring the Trustee to comply with the Superior Court orders.

     2. KAC's Alternative Requests for Relief

          a. The Motion to Dismiss

     The Court finds that the grounds stated by KAC are insufficient to warrant dismissal

of the Debtor's Chapter 7 bankruptcy case.  The Debtor's alleged bad faith and alleged

misuse of the bankruptcy system do not constitute cause for dismissal under 11 U.S.C. §

707(a)(1)-(3).  *See generally* <u>In re Linehan</u>, 326 B.R. 474 (Bankr. D. Mass. 2005).  The court in

<u>In re Farkas,</u> 343 B.R. 336 (Bankr. S.D. Fla. 2006), highlighted the aspects of Chapter 7 which

distinguish the relief afforded under that chapter of the Bankruptcy Code from Chapters

11 and 13 which explicitly require findings of good faith.  It stated:

> "[w]hat distinguishes Chapter 11 and Chapter 13 from Chapter 7 is the
> language of the Bankruptcy Code itself and the post-filing relationship
> between the debtor and his creditors. Chapter 11 and 13 specifically delineate
> a good faith requirement for proposed payment plan.  Chapter 7 makes no
> mention of a good faith requirement. Further, the relationship between the
> debtor and creditor in Chapter 11 and Chapter 13 is significantly different
> than their relationship in Chapter 7. Chapter 11 and 13 debtors are allowed
> to continue possession of their assets and alter their contractual relationships
> with their creditors. Chapter 7, on the other hand, ends the creditor-debtor
> relationship when the debtor metaphorically "throws in the towel." So long
> as the debtor is willing to surrender all of its assets, regardless of whether
> debtor's motive was grounded in good faith, the debtor is entitled to Chapter
> 7 protection."

343 B.R. at 339-40 (quoting In re RIS Investment Group, Inc., 298 B.R. 848, 852(Bankr. S.D.

Fla. 2003)(citations omitted)).

KAC urges this Court to adopt a totality of the circumstances approach to a

determination of good faith, citing, *inter alia,* In re Shar, 253 B.R. 621, 631 n. 5 and n. 6

(Bankr. D. N.J. 1999), a case in which the court relied upon Y.J. Sons & Co., Inc. v.

Anemone, Inc. (In re Y.J. Sons & Co., Inc.), 212 B.R. 793, 802 (D. N.J. 1997).  The Court

rejects KAC's reliance on the totality of the circumstances approach in this Chapter 7 case.

Both Shar and Y.J. Sons & Co., Inc. were Chapter 11 cases, and the standards applicable to

a motion to dismiss in Chapter 11 are different from those applicable to Chapter 7 cases.

Moreover, both KAC and Conefrey had the opportunity to object to the Debtor's discharge

if they believed that the inaccuracies in her schedules warranted relief under 11 U.S.C. §

727(a)(4)(A), but they chose not to do so.

KAC's reliance on 11 U.S.C. § 727(a)(9) also is misplaced because the Debtor's Chapter 12 case, in which she received a discharge within eight years of the filing of the instant case, resulted in the payment of 100 percent of allowed unsecured claims. KAC maintains, erroneously, that because the Debtor is not entitled to a discharge in this case, she had "noneconomic" reasons for filing a bankruptcy petition warranting dismissal for extreme misconduct. The Court rejects this contention as it is unsupported by the provisions of 11 U.S.C. § 727(a)(9).

### b. The Motion for Relief from Stay

KAC relies in part on <u>Milne v. Johnson (In re Milne)</u>, 185 B.R. 280 (N.D. Ill. 1995), in seeking relief from the automatic stay. In that case, the district court affirmed the bankruptcy court's order granting relief from the automatic stay, "for cause" under 11 U.S.C. § 362(d)(1), to a bidder at a tax sale who received a Certificate of Purchase, which enabled him, following the expiration of the debtor's redemption period, to obtain a tax deed to the debtor's property. In <u>Milne</u>, the court observed:

> The only express definition of cause in section 362(d)(1) is the single illustrative example that it includes lack of adequate protection of a creditor's interest. *See* Robert E. Ginsberg & Robert D. Martin, 1 Bankruptcy: Text, Statutes, Rules § 3.05[b], at 3-56 (3d ed. Supp.1994) (hereinafter "Ginsberg") ("[T]he use of the word including in the statute is exemplary rather than exhaustive."). What constitutes cause under section 362(d)(1) other than lack of adequate protection has been developed on a case-by-case basis. *See* Ginsberg, § 3.05 [f], at 3-69; <u>Manhattan King David Restaurant, Inc. v. Levine</u>, 163 B.R. 36, 40 (S.D.N.Y.1993). Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing

the stay. *See* Ginsberg, § 3.05[f], at 3-69 & 3-70; <u>Manhattan King David Restaurant</u>, 163 B.R. at 40.

KAC maintains that application of the factors set forth in <u>Milne</u> entitle it to relief from the automatic stay "for cause." It avers that consummation of the court-ordered transaction would facilitate the bankruptcy process because "it provides a fair and expedient means of satisfying the claims of all of the secured and unsecured priority creditors and would still generate additional funds for application toward the claims of unsecured nonpriority creditors." Additionally, it relies on the Debtor's bad faith, the harm it has suffered as a result of the Debtor's conduct, and the absence of injury to the estate and the Debtor's other creditors, stating that "the Superior Court Order is ultimately not subject to avoidance, rejection or discharge and both law and equity require that the debtor comply with the Superior Court Order."

Although KAC did not cite the decision in <u>Roxse Homes, Inc.</u>, 74 B.R. 810(Bankr. D. Mass. 1987), *aff'd*, 83 B.R. 185 (D. Mass. 1988), the Chapter 7 Trustee did. In recognition of the decisions issued by the bankruptcy court and the district court, he argues that the Co-Tenancy Agreement is an executory contract which he can reject, thus creating a claim for bankruptcy purposes. *See* <u>In re Onecast Media, Inc.</u>, 439 F.3d 558, 563 (9th Cir. 2006)(observing that rejection of an executory contract serves two purposes: relieving the estate of burdensome future obligations and permitting the other party to the contract to file a claim for breach of contract). Moreover, he argues that the equities favor the Debtor's estate as only the Debtor's funds were used to operate the co-tenancy business.

In In re Roxse Homes, Inc. v. Roxse Home Ltd. P'ship, 83 B.R. 185 (D. Mass. 1988), *aff'g*, 74 B.R. 810 (Bankr. D. Mass. 1987), the district court affirmed a decision of the bankruptcy court which granted relief from stay for the enforcement of a state court judgment for specific performance. In Roxse Homes, the Chapter 11 debtor's sole asset was a 364-unit subsidized apartment complex in Boston. Prior to the debtor's bankruptcy, the debtor and a Massachusetts limited partnership (the "Partnership") executed a purchase and sale agreement pursuant to which the debtor agreed to sell its property for $13.7 million. Despite preliminary approvals from the Department of Housing and Urban Development, the debtor refused to close the transaction, and the Partnership eventually commenced suit in the Superior Court seeking specific performance of the purchase and sale agreement. The Partnership obtained a "judgment which provided that, if the Debtor failed to execute and deliver a deed within ten (10) days, the Superior Court would appoint a Special Master to do so." 74 B.R. at 812. While various appeals were pending, the debtor filed a Chapter 11 petition.

The Partnership moved for relief from the automatic stay to enforce its state court judgment, and, if necessary, to obtain the appointment of a special master to execute and deliver a deed if the debtor failed to do so. The Partnership argued that it had both equitable ownership and the right to legal title to the property, while the debtor argued that the Partnership breached the purchase and sale agreement and was entitled to only a money claim against its estate. Id. at 813. According to the bankruptcy court, the debtor urged it to "either (1) look behind the Superior Court judgment to the original dispute and

35

find that the Purchase and Sale Agreement is an executory contract the Debtor may reject under 11 U.S.C. § 365; or (2) determine that the Superior Court judgment, *recorded by the Partnership on the date of its issuance . . .* is a claim.

The bankruptcy court determined that the purchase and sale agreement was not executory, citing, *inter alia* <u>In re Pribonic</u>, 70 B.R. 596 (Bankr. W.D. Pa. 1987).  Indeed, the bankruptcy court stated that the obligations remaining were imposed by judicial decree and could not be collaterally attacked.  It stated: "[t]his court is bound to give effect to the state court judgment which was rendered prior to the bankruptcy petition." <u>Roxse Homes, Inc.</u>, 74 B.R. at 818.  Alternatively, it determined that the Partnership's judgment was not a claim against the debtor's bankruptcy estate, citing <u>Rix v. Dooley</u>, 322 Mass. 303, 307 (1948), for the proposition that "under Massachusetts law, there is no case or statute which provides that an unenforced judgment for specific performance may be satisfied by a payment of money in the event performance is refused." 74 B.R. at 819.[12]  The bankruptcy court concluded that the debtor had failed to show that the Superior Court had not considered equitable reasons for refusing specific performance.  <u>Id.</u> (citing <u>Raynor v. Russell</u>, 353 Mass. 366, 367 (1967)).

In affirming the bankruptcy court, the district court, citing the definition of a claim,

---

[12] <u>Rix v. Dooley</u> involved an appeal from a judgment for specific performance. The court determined that the plaintiffs were not entitled, in the alternative, to damages.  It stated: "The plaintiffs elected to come into equity and have made out a case for equitable relief. No disability on the part of the defendants to perform their contract appears." 322 Mass. at 234 (citations omitted).

11 U.S.C. § 101(4),[13] as well as Mass. Gen. Laws ch. 214, § 1A,[14] stated that money damages

are usually an inadequate remedy in the case of the sale of land.  It observed: "'in the

absence of significant equitable reasons for refusing such relief, specific performance of real

estate agreements is appropriate.'" 83 B.R. at 189 (citing Raynor v. Russell, 353 Mass. 366,

367-68 (1967)).

While the decisions issued by the bankruptcy court and the district court in Roxse

Homes are superficially compelling, this Court finds that they do not dictate the outcome

in this case.  Although this Court finds that the Co-Tenancy Agreement is no longer

executory, the decisions in Roxse Homes, which have been followed by the court in Winter

v. Glaze (In re Glaze), 169 B.R. 956 (Bankr. D. Ariz. 1994), are distinguishable.  In the first

place, the Partnership in Roxse Homes recorded its judgment in compliance with Mass.

---

[13] "Claim" means: "right to an equitable remedy for breach of performance if
such breach gives rise to a right to payment, whether or not such right to an equitable
remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,
undisputed, secured or unsecured."  11 U.S.C. § 101(5)(B).  The Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 renumbered the definition.

[14] Section 1A provides:

The fact that the plaintiff has a remedy in damages shall not bar an action
for specific performance of a contract, other than one for purely personal
services, if the court finds that no other existing remedy, or the damages
recoverable thereby is in fact the equivalent of the performance promised
by the contract relied on by the plaintiff, and the court may order specific
performance if it finds such remedy to be practicable. . . .

Mass. Gen. Laws ch. 214, § 1A.

Gen. Laws ch. 183, § 44, and neither the bankruptcy court nor the district court had occasion to consider the trustee's rights as a hypothetical bona fide purchaser in ruling on the motion for relief from the automatic stay.  Additionally, unlike the situation in Roxse Homes, which involved a purchase and sale agreement, the Co-Tenancy Agreement in this case is more akin to a partnership agreement, and, at the time of its ruling, the Superior Court was not called upon to consider the claims of the Debtor's unsecured creditors which would be adversely affected by strict adherence to implementation of the deadlock provisions in the Co-Tenancy Agreement.  Finally, KAC has filed a proof of claim in the Debtor's bankruptcy case, which can be interpreted as an acknowledgment that they can be compensated with money damages.

Thus, in ruling on KAC's Motion for Relief from Stay, the Court finds that employment of the balancing test set forth in In re Indian River Estates, Inc., 293 B.R. at 433, is appropriate.  Weighing the interests of the estate against the hardships that will be incurred by KAC, this Court finds that granting KAC relief from stay to enforce its state court judgment is unwarranted and highly prejudicial to the unsecured creditors of the Debtor's bankruptcy estate.  In this case, it is the estate representative, not the Debtor, objecting to KAC's alternative request for relief from stay, and it is the unsecured creditors, not the Debtor, who will benefit by denial of the motion for relief from stay.  The Debtor has "thrown in the towel," and it is exceedingly unlikely that there will be surplus funds in the estate that will inure to her benefit.

Additionally, Massachusetts law is more liberal with respect to the availability of

38

specific performance than many jurisdictions.    Aerovox, Inc. v. Parallax Power

Components LLC (In re Aerovox, Inc.), 281 B.R. 419, 434 (Bankr. D. Mass. 2002).  It permits

contracting parties whose damage claims may be calculable to obtain specific performance

in the form of a decree ordering a party to affirmatively carry out his contractual duties or

enjoining it from violating the contract. Id. (citing, *inter alia,* Mass. Gen. Laws. ch 214, §

1A).  This Court in Aerovox, Inc. recognized that granting specific performance is within

the discretion of the judge.  It stated:

> Among the factors to be considered in granting a decree for specific
> performance, the most important seem to be the following: difficulty and
> uncertainty in determining the amount of damages to be awarded for the
> defendant's breach; . . . [and] the insufficiency of money damages to obtain
> the duplicate or the substantial equivalent of the promised performance,
> either because the subject matter is unique in character and cannot be
> duplicated or because the obtaining of a substantial equivalent involves
> difficulty, delay and inconvenience.

Id. (citing Triple-A Baseball Club Assoc. v. Northeastern Baseball, Inc., 832 F.2d 214, 224

(1st Cir.1987) (quoting 5A Corbin on Contracts § 1142 at 117 (1964 & Supp.1982)).

The October 11, 2005 order of the Superior Court directed the Debtor to comply with

the deadlock provisions of the Co-Tenancy Agreement.  It contained no discussion of the

factors cited in Triple-A Baseball Club Assoc., and, as noted, the potential claims to the

equity in the Property of the Debtor's unsecured creditors.  Under these circumstances, the

Court finds that KAC and Conefrey's pre-petition damages can be addressed through the

proof of claim they have filed.  The Rooker-Feldman doctrine does not demand a different

result.  The Superior Court orders simply could not, and did not, address the ramifications

39

of the Debtor's decision to file a bankruptcy petition and the concomitant legal and

equitable rights of the Chapter 7 Trustee.

## V. CONCLUSION

In view of the foregoing, the Court hereby denies the Motion to Compel and the

related relief contained in the Motion.  An appropriate order shall issue.

By the Court,

_____
Joan N. Feeney
United States Bankruptcy Court

Dated: March 6, 2007
cc: Donald R. Lassman, Esq., James M. Liston, Esq., Jonathan S. Klavens, Esq., U.S. Trustee

40